IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RAJ BHARADWAJA,

   Plaintiff,

v.

MARTIN O'MALLEY, *et al.*,

   Defendants.

               Civil Action No.: RDB 04-3826

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

  This action arises out of a Complaint that Raj Bharadwaja ("Plaintiff" or "Bharadwaja") filed against the Mayor and City Council of Baltimore, the Housing Authority of Baltimore City, the Department of Housing & Community Development, Mayor Martin O'Malley, Dorreya Elmenshawy, and unnamed John and Jane Does (collectively, "Defendants"). The Complaint alleges that Defendants retaliated against Bharadwaja for complaining about discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). The Complaint also asserts causes of action for civil conspiracy, wrongful termination, and defamation that are based on the law of the State of Maryland.

  Currently pending are two motions: Defendants' Motion for Summary Judgment (Paper No. 42), and Plaintiff's Motion to Supplement its Response to Defendants' Motion for Summary Judgment (Paper No. 55). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, both of the pending motions are GRANTED.

BACKGROUND

This Court reviews the facts of this case in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). From August 1999 through December 2003, Plaintiff worked for the City of Baltimore's Department of Housing and Community Development ("HCD").  Initially, Plaintiff held the civil service position of Engineer II in the Construction and Building Inspection Division where his responsibilities included reviewing and issuing permits for building plans.  Later, Plaintiff sought out a non-civil servant position at the management level.

In July 2002, Plaintiff was appointed to the non-civil servant position of Assistant Director of Permits and Code Enforcement where his responsibilities included supervising the process associated with issuing building plan permits.  During his tenure as Assistant Director, Plaintiff was supervised by Dorreya Elmenshawy.  Plaintiff describes Ms. Elmenshawy as Egyptian and of the Muslim faith and provides that he is Indian and of the Hindu faith.  (*See* Pl.'s Opp. p. 1.)

In August 2002, Plaintiff sent an email to Otis Rolley, the First Deputy Commissioner of HCD and the Housing Authority of Baltimore City ("HABC") requesting that Mr. Rolley meet with him to discuss the performance of a computer system installed by Tidemark Solutions ("Tidemark").  This computer system was installed to automate functions performed by the City's Building and Housing Inspection departments under a contract executed in 2001.  Plaintiff maintains that he raised serious issues with respect to the poor performance of the Tidemark computer system from August 2002 through August 2003, and that he was retaliated against in a

number of different ways for raising such issues.[1]

In October 2002, Plaintiff reports attending a meeting with Ms. Elmenshawy and two individuals of Indian descent, G. Patel and Satish Patel.  During that meeting Plaintiff contends that Ms. Elmenshawy asked whether "it was in your people's culture to be rude to people." (Def.'s Opp. p. 2 (citing Bharadwaja Dep. pp. 38-40 & Ex. B).)  Plaintiff also contends that, on other occasions, Ms. Elmenshawy made comments "reflecting racial and religious animus towards Mr. Bharadwaja in particular and/or his national origin and religion in general."  (*Id.*) Specifically, Plaintiff asserts that "several times" Ms. Elmenshawy "insinuated that the Indian HCD employees were favoring Indian employment candidates."  (*Id.* (citing Bharadwaja Dep. pp. 33-35).)

On January 15, 2003, Plaintiff was suspended for thirty days by J. Gregory Love, Deputy Commissioner for Code Enforcement, for allegedly interfering with the hiring process in connection with a candidate for the position of Construction Electrical Inspector I.[2]  After his suspension, Mr. Love and Ms. Elmenshawy decided to limit Plaintiff's supervisory responsibilities.

On August 13, 2003, Plaintiff met with Denise Duvall, Deputy Commissioner for Code Enforcement.  During this meeting, Ms. Duvall stated that Plaintiff negatively impacted staff

---

[1]     Plaintiff contends that Tidemark was awarded the contract with the City "due to the close political ties the company had with politicians in the City government."  (Pl.'s Opp. p. 2 (citations omitted).)

[2]     Plaintiff believes that he was wrongfully accused of interfering with this hiring process and testified at his deposition that he never met and does not know the candidate at issue. Defendants point out that three interview panelists involved in the hiring process reported that Plaintiff spoke to them in support of that same candidate.  (*See* Pl.'s Opp. p. 3; Def.'s Summ. J. Mem. p.3.)

morale when he claimed responsibility for the termination of Ms. Duvall's predecessor, Mr. Love.[3]  Ms. Duvall decided to reassign Plaintiff from the Department of Code Enforcement (where Plaintiff was supervised by Ms. Elmenshawy) to the Demolition Department (where Plaintiff was supervised by Larry Little).

On September 16, 2003, Plaintiff met with Nicol Nabors-Jackson, HCD's harassment hearing officer, and stated that Ms. Elmenshawy was harassing him.  Accordingly to Plaintiff, Ms. Nabors-Jackson advised him that she could not take his complaint and suggested that he contact Coy Richardson at the Equal Employment Office in Personnel.  (*See* Pl.'s Opp. p. 6.) Plaintiff met with Mr. Richardson and Momoh Conteh later that same day, and again complained that Ms. Elmenshawy was harassing him based on race and because he was raising issues about Tidemark.  According to Plaintiff, Messrs. Richardson and Conteh advised him that he could not file a harassment complaint because he was a contract employee, had no rights, and could be terminated at any point.  (*Id.*)

On November 10, 2003, Plaintiff was informed that his non-civil servant position was being eliminated effective November 24, 2003.  The parties dispute the identity of the decision-maker and the rationale behind this decision.  Defendants contend that the decision was made by Douglass Austin, Deputy Commissioner, and "was based solely on the City's budgetary needs and not on Plaintiff's performance issues."  (Def.'s Summ. J. Mem. p. 4.)  In contrast, Plaintiff asserts that "Ms. Elmenshawy admitted that it was she who decided to terminate Mr. Bharadwaja . . . [and] also admitted in her deposition that she was aware that Mr. Bharadwaja had

---

[3]      Ms. Duvall served as Mr. Love's replacement during the summer of 2003.  (*See* Def.'s Summ. J. Mem. p. 4 n.1.)

4

complained that Ms. Elmenshawy was harassing him before deciding to terminate him."  (Pl.'s Opp. p. 7.)

In mid-November 2003, Ms. Elmenshawy reported to Mr. Austin that certain files that were in Plaintiff's possession could not be located.  Mr. Austin requested that an investigation be conducted by the HCD's Inspector General to determine whether Plaintiff destroyed official City documents.  The Inspector General conducted an investigation and concluded that "[t]here is no evidence to reflect that official documents were shredded."  (Def.'s Summ. J. Mem. Ex. 6.) Plaintiff maintains that Ms. Elmenshawy possessed the missing files and initiated this investigation to harass and defame Plaintiff.  (*See* Pl.'s Opp. p. 8.)

On November 23, 2003, the day before the elimination of Plaintiff's position became effective, Plaintiff and his wife attended a social function at which the Mayor of Baltimore, Martin O'Malley, was also present.  Plaintiff attempted to discuss his termination and the Tidemark computer system with Mayor O'Malley.  The parties dispute the content of the conversation that ensued between Mayor O'Malley and Plaintiff.  Defendants contend that "[w]ithout being discourteous to Plaintiff, the Mayor responded that Plaintiff should speak with Mr. Michael Enright, the First Deputy Mayor [about securing another position within the City]." (Def.'s Summ. J. Mem. p. 5.)  Plaintiff alleges that after accusing him of shredding documents, Mayor O'Malley recognized Plaintiff as a "whistleblower" with respect to the Tidemark computer system and "offered to assist in arranging another job for him."  (Pl.'s Opp. p. 7.)

On June 1, 2004, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that the Housing Authority of Baltimore City ("HABC") retaliated against Plaintiff  for complaining about discrimination in violation of Title

VII.  (*See* Def.'s Mot. Summ. J. Ex. 8.)  On June 30, 2004, Plaintiff filed a Complaint against

Defendants in the Circuit Court for Baltimore City that asserted causes of action based

exclusively on state law.  On August 30, 2004, the EEOC dismissed Plaintiff's discrimination

charge.  (*Id.* at Ex. 9.)  On November 23, 2004, Plaintiff filed a Second Amended Complaint in

the Circuit Court for Baltimore City and added a cause of action for retaliation based on Title

VII.  On December 3, 2004, Defendants filed a notice of removal asserting, as the basis for this

Court's jurisdiction, the existence of a federal question under 28 U.S.C. § 1331 and Title VII.  On

June 21, 2005, this Court granted Plaintiff's Consent Motion to File Third Amended Complaint.

On November 21, 2005, Defendants filed a Motion for Summary Judgment.  On January 30,

2006, Plaintiff filed a Motion to Supplement its Response to Defendants' Motion for Summary

Judgment.

<u>STANDARD OF REVIEW</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material*

fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(emphasis added).  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), the Supreme Court

explained that only "facts that might affect the outcome of the suit under the governing law" are

*material*.  *Id.* at 248.  Moreover, a dispute over a material fact is *genuine* "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The court further

explained that, in considering a motion for summary judgment, a judge's function is limited to

determining whether sufficient evidence supporting a claimed factual dispute exists to warrant

submission of the matter to a jury for resolution at trial.  *Id*. at 249.  In that context, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact."  *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Thus, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50.  Similarly, the existence of a mere "scintilla" of evidence in support of the nonmoving party's case is insufficient to preclude an order granting summary judgment.  *Id*. at 252.

A genuine issue of material fact may exist if the evidence presented to the court is sufficient to indicate the existence of a factual dispute that could be resolved in favor of the non-moving party at trial.  *Rachael-Smith v. FTDATA, Inc.,* 247 F. Supp. 2d 734, 742 (D. Md. 2003) (citing *Anderson*, 477 U.S. at 248-49).  Moreover, any inferences drawn from disputed evidence must be accorded to the non-moving party.  *See Matsushita,* 475 U.S. at 587-88; *EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

DISCUSSION

**I.      Plaintiff's Complaint.**

Plaintiff's Third Amended Complaint asserts three causes of action against Defendants. In Count I, Plaintiff contends that he was wrongfully terminated because he was investigating and raising problems with the performance of the Tidemark computer system.  (*See* Am. Comp. ¶¶ 58-64.)  In Count II, Plaintiff asserts that he was defamed when Ms. Elmenshawy, Mayor O'Malley, and unnamed John and Jane Does published one or more of the following statements to third parties: that Plaintiff took a bribe, was demoted because he was working at "cross purposes" with HCD, and shredded official City documents.  (*Id*. at ¶¶ 65-69.)  In Count III, Plaintiff alleged that Ms. Elmenshawy, Mayor O'Malley, and unnamed John and Jane Does engaged in a civil conspiracy to sabotage Plaintiff's employment and reputation.  (*Id*. at ¶¶ 70-72.)  In Count IV, Plaintiff contends that he was retaliated against for complaining about discrimination in violation of Title VII.  (*Id*. at ¶¶ 73-78.).  As noted above, Counts I-III are based on the law of the State of Maryland while Count IV is based on a federal statute.

## II.    Defendant Housing Authority of Baltimore City.

Defendants contend that the Housing Authority of Baltimore City ("HABC") is not a proper party to this action because there is no evidence to suggest that HABC was Plaintiff's employer.  In response, Plaintiff contends that HABC is liable as a "joint employer" because it is "factually unclear" whether HABC "assumed an employer relationship with respect to Plaintiff."[4] (Pl.'s Opp. p. 9.)

The standard for determining whether a hired party is an employee was set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989):

---

[4]      The parties agree that Plaintiff was employed by the Department of Housing & Community Development ("HCD").

In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished.   Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.   No one of these factors is determinative.

*Id.* at 751-52 (citations omitted); *see also Cilecek v. Inova Health System Services*, 115 F.3d 256, 259-60 (4th Cir. 1997) (applying the above test in the context of Title VII), *cert. denied*, 522 U.S. 1049 (1998).

Defendants contend that there is no evidence to suggest that any entity other than HCD controlled significant aspects of the compensation, terms, condition, or privileges of Plaintiff's employment with the City of Baltimore.   Defendants cite to deposition testimony explaining that "[p]ursuant to an understanding and well-established practices between HABC and HCD, Plaintiff (like many other HCD employees) was hired through HABC's human resources office with reimbursement from HCD for the full costs of paying Plaintiff's salary." (Def.'s Summ. J. Mem. p. 8 (citations omitted).) Defendants contend that this explanation—which is not disputed by Plaintiff—accounts for the evidence that Plaintiff contends give rise to "questions of fact regarding whether HABC, along with HCD, was [Plaintiff's] employer. . . ."[5] (Pl.'s Opp. p. 9.)

_____

[5]       The evidence focused on by Plaintiff includes the following: (1) an "Employee Status Change Recommendation" form from HABC (*See* Pl.'s Opp. Ex. BB); (2) paychecks issued to Plaintiff from HABC (*Id*. at Ex. CC); (3) three documents from Plaintiff's personnel file that state HABC and/or HCD on the document (*Id*. at Ex. DD); and (4) Plaintiff's termination letter dated November 10, 2002 from Larry Little stating that Plaintiff's position

After reviewing the evidence forecast by the parties, this Court finds that there is no genuine issue of material fact with respect to the claim that HABC was *not* Plaintiff's employer. Accordingly, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's claims against the Housing Authority of Baltimore City.

## III.   Motion to Supplement.

Plaintiff requests leave to supplement his response to Defendants' Motion for Summary Judgment with an affidavit from Larry Little, who was Plaintiff's supervisor from August to November 2003.  The affidavit provides that:

> [Mr. Bharadwaja] was transferred to my Department because of the complaints he had filed against his former supervisor, Dorreya Elmenshawy.  I was told this by Douglas Austin, who was the Deputy Commissioner of [the Department of Housing and Community] at the time, and Denise Duvall.
>
> * * *
>
> I was told that [Mr. Bharadwaja] was being terminated because of complaints by his supervisor, who was Ms. Elmenshawy.  I was never told that he was being terminated because it was necessary in order to have funding for two positions.

(Little Aff. ¶¶ 3-6.)  Counsel for Plaintiff explains that although he made numerous attempts to obtain the affidavit before January 6, 2006—the date that Plaintiff's responsive papers were due— it was difficult to communicate with Mr. Little because he was assisting victims of Hurricane Katrina in the State of Louisiana.  Although Defendants dispute the adequacy of the reasons offered to explain Plaintiff's tardy submission, this Court does not find that counsel for

---

"with the Housing Authority of Baltimore City" was being abolished, and thanking him for his "hard work and service to HABC."  (*Id*. at Ex. U.)  Although this evidence may have led Plaintiff to name HABC on his EEOC charge instead of HCD, *see* Discussion *infra* § V.B, it is not sufficient to allow a reasonable jury to conclude that HABC was Plaintiff's employer under the standard set forth in *Community for Creative Non-Violence*, 490 U.S. at 751-52.

Plaintiff acted unreasonably in communicating with Mr. Little regarding the affidavit.

Accordingly, Plaintiff's Motion to Supplement its Response to Defendants' Motion for Summary

Judgment is GRANTED and this Court has considered Plaintiff's submission in addressing

Defendants' Motion for Summary Judgment.

## IV.     Plaintiff's Retaliation Claim (Count IV).

### A.     Defendants Not Liable in their Individual Capacities.

Plaintiff does not dispute Defendants' claim that Mayor O'Malley and Ms.

Elmenshawy— both of whom were sued in their individual capacities—are not liable with

respect to Plaintiff's Title VII claim under well-established law.  *See, e.g.*, *Lissau v. Southern*

*Food Service, Inc.*, 159 F.3d 177, 181 (4th Cir. 1998) ("We join these courts and reiterate that

supervisors are not liable in their individual capacities for Title VII violations.").  Accordingly,

Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's Title VII

claim against Mayor O'Malley and Ms. Elmenshawy.

### B.     Exhaustion of Administrative Remedies.

Defendants argue that Plaintiff can only pursue his Title VII claim against the Housing

Authority of Baltimore City ("HABC") because Plaintiff only named HABC in his EEOC charge

and only the named party in an EEOC charge can be a defendant in a subsequent civil action.

Plaintiff counters that the "substantial identity" exception to this rule entitles him to pursue his

Title VII claim against the Department of Housing & Community Development ("HCD") and/or

the Mayor and City Council of Baltimore.

Although a civil action brought under Title VII generally must name, as the defendant,

the respondent who was named in the charge filed with the EEOC, *see, e.g.*, 42 U.S.C. 2000e-

11

5(f)(1), some courts have recognized a "substantial identity" exception to this general rule, *see*, *e.g.*, *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980).  Under the substantial identity exception, courts allow a Title VII claim to proceed against a defendant not named in the EEOC charge provided that there is sufficient identity of interest between that defendant and the respondent who was named in the EEOC charge.  The substantial identity exception has not been adopted by the United States Court of Appeals for the Fourth Circuit.  *See Alvarado v. Bd. of T. of Montgomery Com. College*, 848 F.2d 457, 461 (4th Cir. 1988) ("We thus intimate no opinion on the validity of the exception in the Fourth Circuit.").  It has been selectively applied by this Court, however, on at least three occasions.  *See Vanguard Justice Society v. Hughes*, 471 F. Supp. 670, 688-89 (D. Md. 1979); *McAdoo v. Toll*, 591 F. Supp. 1399, 1403-04 (D. Md. 1984); *Weide v. Mass Transit Admin.*, 628 F. Supp. 247, 249 (D. Md. 1985).

In *Vanguard Justice Society v. Hughes*, this Court noted that the following factors should be considered when determining whether to apply the substantial identity exception:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

471 F. Supp. at 688 (quoting *Glus v. G. C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)).  In this case, the evidence forecast by the parties suggests that HCD may have represented to Plaintiff that its relationship with Plaintiff is to be through HABC.  For example, Plaintiff was given paychecks issued by HABC and Plaintiff's termination letter states that his position was

12

"with the Housing Authority of Baltimore City. . . ."  (*See* Pl.'s Opp. Exs. U & CC.)  In addition, there is no dispute that the interests of HCD were in fact represented during the EEOC proceedings against HABC.  (*See* Def.'s Reply; Pl.'s Opp. Ex. EE (position statement submitted on behalf of HCD during EEOC proceedings).)  Based on these and other factors, this Court concludes that Plaintiff has exhausted his administrative remedies against HCD and the Mayor and City Council of Baltimore.[6]  Accordingly, this Court considers Plaintiff's Title VII claim as well as others in its analysis of Defendants' Motion for Summary Judgment.

### C.   *McDonnell Douglas* **Burden-Shifting Framework.**

It is well-established that "[r]etaliation may be proved via direct evidence or the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Peters v. Jenney*, 327 F.3d 307, 320 n.15 (4th Cir. 2003)).  In this case, Plaintiff makes no suggestion that his retaliation claim is supported by direct evidence.[7]  Plaintiff employed the *McDonnell Douglas* burden-shifting framework to analyze his retaliation claim in his summary judgment papers.  (*See* Pl.'s Opp. pp. 18-23.)  In addition, Plaintiff contends that the affidavit of Mr. Little—which was submitted *after* briefing on Defendants' summary judgment motion was

---

[6]     Defendants do not claim that Plaintiff's Title VII claim is properly lodged against HCD alone, as opposed to HCD *and* the Mayor and City Council of Baltimore.

[7]     *See generally Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995) (defining "direct evidence" as "evidence of conduct or statements that reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."), *abrogated on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Cline v. Roadway Exp., Inc.*, 689 F.2d 481, 485 (4th Cir. 1982) (defining "direct evidence" as evidence that the employer "announced, admitted, or otherwise unmistakably indicated that [the forbidden consideration] was a determining factor. . . ."); *see also Jenney*, 327 F.3d at 320 n.15 (4th Cir. 2003) ("The difference, however, between direct evidence and *McDonnell Douglas* proof in the retaliation context pertains to the third, causal-connection, prong of a retaliation claim, which may be proved circumstantially in the *McDonnell Douglas* context.") (citations omitted).

complete—constitutes nothing more than "circumstantial evidence that the legitimate business reason proffered by Defendants for Mr. Bharadwaja's termination is pretextual." (Pl.'s Mot. to Supp. p. 3 (citing *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852-53 (4th Cir. 2001)); *see also* Discussion *supra* § III (granting Plaintiff's motion to supplement its opposition with Mr. Little's affidavit).

This Court also concludes that the affidavit of Mr. Little does not constitute evidence "that both reflect[s] directly the alleged discriminatory attitude and that bear[s] directly on the contested employment decision." *Fuller*, 67 F.3d at 1142. Mr. Little's affidavit provides that:

> [Mr. Bharadwaja] was transferred to my Department because of the complaints he had filed against his former supervisor, Dorreya Elmenshawy. I was told this by Douglas Austin, who was the Deputy Commissioner of [the Department of Housing and Community] at the time, and Denise Duvall.
>
> * * *
>
> I was told that [Mr. Bharadwaja] was being terminated because of complaints by his supervisor, who was Ms. Elmenshawy. I was never told that he was being terminated because it was necessary in order to have funding for two positions.

(Little Aff. ¶¶ 3-6.) First, Mr. Little's affidavit does not distinguish between complaints that Plaintiff made about harassment based on race and complaints that Plaintiff made about harassment based on the poor performance of the Tidemark computer system. (*See* Pl.'s Opp. pp. 6 & 19 (indicating that Plaintiff complained about harassment based on race *and* complaints about Tidemark).) This is significant as complaints about the performance of a computer system are obviously not protected under Title VII**.** Similarly, Mr. Little's affidavit says nothing about the nature of the complaints made by Ms. Elmenshawy that allegedly led to Plaintiff's termination. As a result, Mr. Little's proffered testimony does not, on its face, reflect a direct connection between Plaintiff's alleged protected activity and his transfer or termination. Second,

although Mr. Austin, Ms. Duvall, and Ms. Elmenshawy are, at least allegedly, decisionmakers with respect to Plaintiff's transfer or termination, there is no suggestion that Mr. Little was such a decisionmaker.[8]  Third, the specific contents of the conversations that Mr. Little asserts he had with Mr. Austin and Ms. Duvall are not described in detail.  This considerably weakens the evidence proffered by Plaintiff.  In sum, this Court concludes that even viewing this evidence in the light most favorable to Plaintiff, Mr. Little's affidavit does not directly reflect the alleged discriminatory attitude and directly bear on the contested employment decisions.  *See generally Fuller*, 67 F.3d at 1142; *see also Kubicko v. Ogden Logistics Services*, 181 F.3d 544, 553-54 (4th Cir. 1999).  Accordingly, Plaintiff's retaliation claim is governed by the familiar three-step burden-shifting model of circumstantial evidence of discrimination set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* burden-shifting framework, the plaintiff bears the initial burden of proving a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  If a *prima facie* case is established, the burden then shifts to the defendant to rebut the inference.  *Id*.  While the defendant's burden is not onerous, it must articulate "some legitimate, nondiscriminatory reason" for its conduct.  *Id*.  If the defendant articulates such a reason, the ultimate burden shifts to the plaintiff to show that the defendant's stated reason is "pretext."  *Id*. at 804.  If the plaintiff cannot present facts that would permit a reasonable inference that the stated reason is a pretext for discrimination, summary judgment in favor of the defendant should

---

[8]      *Cf. Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 286 (4th Cir. 2004) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) for the proposition that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination).

be granted.  *See Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) (citing *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000)).

      **(1)**    *Prima Facie* **Case.**

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate

that (1) he engaged in protected activity, (2) a reasonable employee would have found the

challenged action materially adverse, and (3) there was a causal connection between the activity

and the challenged action.  *See Burlington N. & S. F. R. Co. v. White*, 548 U.S. ___, ___, 126

S.Ct. 2405, 2414 (2006); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir.

2005).[9]   For the reasons explained below, Plaintiff cannot satisfy the first prong of the above test

and has therefore failed to present a *prima facie* case of retaliation.

To satisfy the first prong of the *prima facie* test, Plaintiff must show that he engaged in

"protected activity."  There are two categories of protected activity: participation and

opposition.[10]  Only one of those categories—opposition activity—is claimed by Plaintiff in this

---

      [9]     In *Burlington*, the Supreme Court established that "[t]he scope of the
anti-retaliation provision extends beyond workplace-related or employment-related retaliatory
acts and harm."  *Burlington*, 126 S.Ct. at 2414. As a result, a plaintiff need not establish an
"adverse employment action" to satisfy the second prong of the *prima facie* test for a retaliation
claim.  *Id*. at 2419.  Instead, a plaintiff must "show that a reasonable employee would have found
the challenged action materially adverse, which in this context means it well might have
dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id*. at
2415 (internal quotation marks omitted).  However, incidents such as "petty slights, minor
annoyances, and simple lack of good manners" are still insufficient to support a claim of
retaliation even under this newly elaborated standard.  *Id*.

      [10]     The relevant provision of Title VII provides: "It shall be an unlawful employment
practice for an employer to discriminate against any of his employees . . . because he has
*opposed* any practice made an unlawful employment practice by this subchapter, or because he
has made a charge, testified, assisted, or *participated* in any manner in an investigation,
proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a) (emphasis added).

matter.  (*See* Pl.'s Opp. p. 19.)  The United States Court of Appeals for the Fourth Circuit has

held that "opposition activity is protected when it responds to an employment practice that the

employee *reasonably believes* is unlawful."  *Jordan v. Alternative Resources Corp.*, 458 F.3d

332, 338-39 (4th Cir. 2006) (emphasis in original) (citing *EEOC v. Navy Fed. Credit Union*, 424

F.3d 397, 406-07 (4th Cir. 2005) and *Peters v. Jenney*, 327 F.3d 307, 320-21 (4th Cir. 2003)).

     Although Plaintiff does not identify the type of unlawful employment practice that he

opposed, it appears that Plaintiff was complaining about the existence of a hostile work

environment.[11]  As the Fourth Circuit explained in the *Jordan* decision:

> The "unlawful employment practices" that an employee can oppose,
> and thereby be protected from retaliation, include practices that
> "discriminate against any individual with respect to his
> compensation, terms, conditions, or privileges of employment,
> because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Such
> discrimination includes maintaining a racially hostile work
> environment, *i.e.*, a "workplace . . . permeated with discriminatory
> intimidation, ridicule, and insult that is sufficiently severe or
> pervasive to alter the conditions of the victim's employment and
> create an abusive working environment."

458 F.3d at 339 (citations omitted).  Because the opposition activity that Plaintiff claims to have

engaged in appears limited to complaining about a hostile work environment, "the question

reduces to whether [Plaintiff] complained about an actual hostile work environment or, if there

---

[11]     (*See* Am. Compl. ¶ 35 ("On September 16, 2003, Plaintiff met with Nabors-
Jackson, and advised her that he was being harassed by Elmenshawy due to his national origin
and his religion."); *see also* Pl.'s Opp. p. 6 ("On September 16, 2003, Mr. Bharadwaja met with
Ms. Nikol Nabors-Jackson, HCD's harassment hearing officer, and advised her that Ms.
Elmenshawy was harassing him."); Bharadwaja Dep. pp. 136-37 ("Q. And at that time did you
discuss with [Ms. Nabors-Jackson] your desire to get another position with the city?  A.  No,
ma'am.  I told her I was being harassed."); *see also* Am. Compl. ¶ 10 ("Plaintiff had a difficult
time working under Elmenshawy because of comments she had made on several occasions
reflecting racial and religious animus towards Plaintiff in particular and/or his national original
and religion in general."); Pl's Opp. p. 2 (same).)

was not one, whether [Plaintiff] could reasonably have believed there was one." *Id.*[12]

In this case, Plaintiff only identifies a few instances of alleged harassment.  First, Plaintiff contends that, "on several occasions after September 11, 2001, Ms. Elmenshawy stated 'after all that has been done to Muslims, they have a right to react and retaliate.'" (Am. Compl. ¶ 11.)  Second, in October 2002, Plaintiff reports attending a meeting with Ms. Elmenshawy and two individuals of Indian descent, G. Patel and Satish Patel.  During that meeting Plaintiff contends that Ms. Elmenshawy asked whether "it was in your people's culture to be rude to people."  (Def.'s Opp. p. 2 (citing Bharadwaja Dep. pp. 38-40 & Ex. B); *see also* Am. Compl. ¶ 12 (same).)  Finally, Plaintiff contends that "several times Ms. Elmenshawy insinuated that the Indian HCD employees were favoring Indian employment candidates."  (*Id.* (citing Bharadwaja Dep. pp. 33-35).)  Based on these instances of alleged harassment, "Mr. Bharadwaja met with Ms. Nabors-Jackson, HCD's harassment officer, and advised her that Ms. Elmenshawy was harassing him."  (Pl.'s Opp. p. 19.)

After reviewing the evidence forecast by the parties, this Court concludes that Plaintiff was neither complaining about an actual hostile work environment nor could reasonably have believed that there was one.  First, while the comments alleged by Plaintiff are unacceptably offensive, Plaintiff has not come close to alleging an environment of crude and racist conditions so severe or pervasive that they altered the conditions of his employment.  In other words, Plaintiff has not described "a workplace permeated by racism, by threats of violence, by

---

[12]     Defendants point out that any claim that Plaintiff attempts to assert under Title VII based on the existence of a hostile work environment is procedurally barred because Plaintiff failed to make such a claim in his filing with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff elected not to oppose this aspect of Defendants' motion.

improper interference with work, or by conduct resulting in psychological harm." *Jordan*, 458 F.3d at 340 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).  Accordingly, this Court concludes that Plaintiff has not forecast evidence from which the existence of a hostile work environment made unlawful by Title VII could be inferred.

Second, Plaintiff could not reasonably have believed that he was complaining of a hostile work environment under the "objective-reasonableness" inquiry exemplified by *EEOC v. Navy Federal Credit Union*, 424 F.3d 397 (4th Cir. 2005) and *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338-39 (4th Cir. 2006).  In those decisions, the Fourth Circuit held that "an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress." *Jordan*, 458 at 341-42.  The Court emphasized that "[o]bjectively reasonable employees can and do recognize that not every offensive comment will by itself transform a workplace into an abusive one." *Id*. at 342.  Here, the allegations made and evidence forecast by Plaintiff are insufficient to establish that Plaintiff held an objectively reasonable belief that a Title VII violation had occurred or was in progress.  Plaintiff's deposition testimony, moreover, confirms that comments allegedly made by Ms. Elmenshawy had a limited effect on Plaintiff's work environment:

> Q.   Was the national origin discrimination issue an ongoing problem for you on a day-to-day basis with Ms. Elmenshawy?
>
> A.   Not with me, except what I have in those three meetings where she made comments about the culture and in that interview that Indians were given, and the third instance I don't remember.  I did tell you that.  That gave me enough of it about her feelings.  Then she had made a comment for which one of the fire inspectors came attached to it in that meeting after 9-11.  I mean that was not for Indians.  That was for Muslims.  After what has been done to the Muslims,

> they have a right to protect themselves.  That was straight
> from her mouth.

(Bharadwaja Dep. pp. 142-43.)  Accordingly, this Court concludes that Plaintiff cannot

demonstrate that he held an objectively reasonable belief that a Title VII violation was actually

occurring based on circumstances that Plaintiff observed and reasonably believed.

In sum, Plaintiff cannot satisfy his burden of establishing a *prima facie* case of retaliation

under the *McDonnell Douglas* burden-shifting framework because he failed to show that he

engaged in "protected activity."  Specifically, Plaintiff was neither complaining about an actual

violation of Title VII nor could reasonably have believed that there was one.  Accordingly,

Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's Title VII

claim (Count IV).[13]

## V.      Plaintiff's State Law Claims.

### A.      Civil Conspiracy Claim.

Defendants maintain that Plaintiff has failed to adequately support his cause of action for

civil conspiracy under Maryland state law.  Civil conspiracy is defined as:

> [A] combination of two or more persons by an agreement or
> understanding to accomplish an unlawful act or to use unlawful
> means to accomplish an act not in itself illegal, with the further
> requirement that the act or the means employed must result in
> damages to the plaintiff.

---

[13]      Having decided that Plaintiff cannot establish a *prima facie* case, this Court need
not address the parties' other arguments regarding Plaintiff's retaliation claim.  This Court notes
that one of Defendants' arguments is based on law that was overturned by the Supreme Court
*after* Defendants filed their summary judgment papers.  *See Burlington*, 548 U.S. at___, 126
S.Ct. at 2414-19 (a plaintiff need not establish an "adverse employment action" to satisfy the
second prong of the *prima facie* test for a retaliation claim but instead must "show that a
reasonable employee would have found the challenged action materially adverse" ).

*Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (*quoting Green v. Wash. Sub. San. Comm'n*, 269 A.2d 815, 824 (Md. 1970)).  In this case, Defendants contend that Plaintiff is unable to either allege a conspiracy of two or more persons or identify acts performed in furtherance of the conspiracy that resulted in harm to Plaintiff.  (*See* Def.'s Summ. J. Mem. pp. 34-36.)  Plaintiff does not oppose this aspect of Defendants' motion.  As a result, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's cause of action for civil conspiracy (Count III).

      **B.**      **Wrongful Discharge Claim.**

      In Maryland, "an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time." *Adler v. American Standard Corp.*, 432 A.2d 464, 467 (Md. 1981); *Page v. Carolina Coach Co.*, 667 F.2d 1156, 1158 (4th Cir. 1982) (applying Maryland law).  Maryland law recognizes a common law exception to the at-will doctrine "when the motivation for the discharge contravenes some clear mandate of public policy." *Adler*, 432 A.2d at 473.  To sustain a claim for wrongful discharge, the employee must show that (1) he was discharged; (2) the basis for his discharge violates some clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee. *See Wholey v. Sears Roebuck & Co.*, 803 A.2d 482, 489 (Md. 2002).  Whether an employee has satisfied his burden of proving that his termination violated a clear mandate of public policy is a question of law. *Id*. at 487 (citations omitted).

      In their opening brief, Defendants argue that Plaintiff's claim for wrongful discharge fails because Plaintiff has not identified a statute expressing a clear mandate of public policy and, in the absence of such identification, the facts alleged by Plaintiff do not rise to the level of a

wrongful discharge claim under Maryland law.  (*See* Def.'s Summ. J. Mem. p. 29 (citation omitted).)  In response, Plaintiff argues that his termination violated the clear mandate of public policy expressed in the City of Baltimore's "whistleblower" law, *i.e.*, Article I, section 8-1(a) of the Baltimore City Code.  (*See* Pl.'s Opp. pp. 23-24.)  Section 8-1(a) provides as follows:

> **In general.**  Unless a disclosure is specifically prohibited by law, rule, regulation, or written policy, an appointing authority may not take or refuse to take a personnel action with respect to any employee or applicant for employment as a reprisal for any disclosure of information which the employee reasonably believes evidences: (1) a violation of any law, rule, or regulation; (2) gross mismanagement, gross waste of funds, or abuse of authority; or (3) a substantial or specific danger to public health or safety.

BALT. CITY CODE, Art. I, § 8-1(a).  Finally, Defendants point out in their reply brief that Plaintiff failed to identify the Baltimore City Code in his pleadings, and identify a series of other problems with Plaintiff's new legal theory.  (*See* Def.'s Reply pp. 10-12.)

After reviewing the papers submitted by the parties, this Court finds that Plaintiff's claim for wrongful discharge fails as a matter of law.  First, Plaintiff failed to meet the threshold requirement of "plead[ing] with particularity the source of the public policy" allegedly violated by his termination.  *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002), *aff'd*, 823 A.2d 590 (Md. 2003).  Second, even if Plaintiff had appropriately identified the source of the public policy, the Court of Special Appeals of Maryland has established that:

> [P]rovisions of the City's Charter do not rise to the level of a "public policy" of this State.  The policy must be statewide, not merely applicable in the City.  The City Charter provision invoked by [Plaintiff] does not apply statewide. . . .

*Kramer v. Baltimore*, 723 A.2d 529, 538 (Md. Ct. Spec. App. 1999), *cert. denied*, 729 A.2d 405 (Md. 1999).  This reasoning applies with equal force to the provision of the Baltimore City Code

relied upon by Plaintiff.  The Baltimore City Code does not apply statewide and therefore cannot

serve as the basis for a wrongful discharge claim under Maryland common law.  *Id.*  Third, even

if the Baltimore City Code could provide a clear mandate of this State's public policy, Plaintiff

has failed to forecast any evidence establishing that he "reasonably believed" that disclosing

information about the poor performance of the Tidewater computer system evidences "gross

mismanagement" or "gross waste of funds."  BALT. CITY CODE, Art. I, § 8-1(a).  Accordingly,

Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's cause of

action for wrongful discharge (Count I).[14]

### C. Defamation Claim.

The remainder of this Opinion focuses on Plaintiff's cause of action for defamation

(Count II).  As noted above, Plaintiff contends that he was defamed when Ms. Elmenshawy,

Mayor O'Malley, and unnamed John and Jane Does told third parties that Plaintiff took a bribe,

was demoted because he was working at "cross purposes" with HCD, and shredded official City

documents.  (*See* Am. Compl. ¶¶ 65-69.)

### (1) Immunity.

#### a. Martin O'Malley.

Defendants claim that Mayor Martin O'Malley's status as a Maryland public official

insulates him from liability with respect to Plaintiff's defamation and other state law tort claims.

Plaintiff responds that immunity is defeated because Mayor O'Malley engaged in "deliberate

acts that form the basis for an intentional tort."  (Pl.'s Opp. p. 10.)

---

[14]     In light of the above ruling, this Court need not address the alternative arguments
made by Defendants with respect to Plaintiff's wrongful discharge claim, *e.g.*, exhaustion of
administrative remedies and failure to comply with Fed. R. Civ. P. 7(a).

Public officials in Maryland enjoy protection from tort liability under public official immunity based on Maryland common and statutory law.  The common law requirements for public official immunity are as follows:

> (1) the actor must be a public official, rather than a mere government employee or agent; (2) the conduct must have occurred while the actor was performing discretionary, as opposed to ministerial, acts; and (3) the actor must have performed the relevant acts within the scope of his official duties.  If those three conditions are met, the public official enjoys a qualified immunity in the absence of "malice."

*Thomas v. City of Annapolis*, 688 A.2d 448, 452 (Md. Ct. Spec. App. 1997).  The statutory requirements are similar.  *See* MD. CODE ANN., CTS. & JUD. PROC. ART., § 5-507(b)(1) ("An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.").  Whether a public official's actions are ministerial or discretionary is a question of law for the Court.  *See McCoy v. Hatmaker*, 763 A.2d 1233, 1247 (Md. Ct. Spec. App. 2000), *cert. denied*, 771 A.2d 1070 (Md. 2001).  Finally, the type of malice needed to defeat public official immunity based on Maryland common law requires "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and wilfully injure the plaintiff." *Leese v. Baltimore County*, 497 A.2d 159, 179 (Md. Ct. Spec. App. 1985) (citations and internal quotation marks omitted), *cert. denied*, 501 A.2d 845 (Md. 1985), *overruled on other grounds by Harford County v. Town of Bel Air*, 704 A.2d 421, 429 n.8 (Md. 1998).

In this case, Defendants contend that Mayor O'Malley enjoys public official immunity based on statutory and common law with respect to Plaintiff's defamation and other state law tort

claims, and that Plaintiff has neither alleged nor identified specific facts that would be sufficient to defeat such immunity.  (*See* Def.'s Summ. J. Mem. pp. 8-10.)  Plaintiff's response to this argument appears limited to the suggestion that his state law tort claims against Mayor O'Malley should proceed to trial based solely upon factual allegations made in Plaintiff's Complaint:

> The Complaint alleges that Mayor O'Malley had a hand in Mr. Bharadwaja's termination because Plaintiff was a whistleblower and that Mayor O'Malley authorized his Deputy Mayor, Michael Enright, to repeat the false statement that Mr. Bharadwaja had shredded documents. . . . First, if, as alleged, the Mayor authorized the Plaintiff's termination for his whistleblowing activities . . . these acts were done for the Mayor's personal benefit, not in furtherance of his duties. . . . Similarly, the Mayor's authorization of Mr. Enright telling Baltimore County Executive James Smith that Plaintiff had shredded documents would be an intentional act of defamation, not a negligent act, which would not be protected by any immunity.

(Pl.'s Opp. pp. 10-11 (citations omitted).)  In the context of summary judgment, however, "an adverse party may *not* rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, *must* set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e) (emphasis added).  Plaintiff's reliance on facts alleged in the Complaint—as opposed to facts that would be admissible at trial—is insufficient to defeat Defendants' motion for summary judgment.[15]

---

[15]     Defendant attempts to identify specific facts to support his claims against Mayor O'Malley.  (*See* Pl.'s Opp. p. 11 (discussing correspondence that Plaintiff sent to City officials and comments made by Plaintiff to Mayor O'Malley).)  Those facts, however, are only relevant to Plaintiff's claims against the Mayor if other facts are accepted as true.  (*Id*. ("There are sufficient facts in the record to document that *if, in fact, the Mayor did authorize this disclosure*, the Mayor would have known that the statements were false and the defamatory acts were therefore intentional.") (emphasis added).)  Ultimately, these attempts to identify specific facts in connection with Plaintiff's claims against Mayor O'Malley fail because they rely on other facts and inferences that are assumed and unsupported.  *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (unsupported speculation is not sufficient to defeat a summary judgment motion) (citations omitted).

Accordingly, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's defamation claim against Mayor O'Malley.

### b.      Dorreya Elmenshawy.

Defendants contend that Ms. Elmenshawy is entitled to a conditional or qualified privilege with respect to two of the three alleged defamatory statements that form the basis of Plaintiff's defamation claims—*i.e.*, that Plaintiff took a bribe and shredded official City documents.  In response, Plaintiff asserts that the facts in this case "[a]t a minimum . . . raise questions as to Ms. Elmenshawy's intent and motive, precluding summary judgment on the question of whether she is entitled to public official immunity."  (Pl.'s Opp. p. 14.)

In Maryland, a defendant in a defamation suit may assert a qualified or conditional privilege.  *See*, *e.g.*, *Woodruff v. Trepel*, 725 A.2d 612, 617 (Md. Ct. Spec. App. 1999), *cert. denied*, 731 A.2d 440 (1999).  As the Maryland Court of Appeals has explained:

> The common law conditional privileges rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest. . . . Specifically, the common law recognized that a person ought to be shielded against civil liability for defamation where, in good faith, he publishes a statement in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties, or where his declaration would be of interest to the public in general.

*Gohari v. Darvish*, 767 A.2d 321, 328 (Md. 2001) (quoting *Marchesi v. Franchino*, 387 A.2d 1129, 1131 (Md. 1978)); *see also McDermott v. Hughley*, 561 A.2d 1038, 1046 (Md. 1989) ("A statement is accorded a qualified privilege only when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter, or some duty with respect thereto.") (citation and internal quotation marks omitted).  Although the existence of

a qualified privilege is a question of law for the court, whether that privilege has been abused is

ordinarily left for the jury to decide.  *Id*. at 333; *see also General Motors Corp. v. Piskor*, 352

A.2d 810, 816 (Md. 1976)

This Court finds that Ms. Elmenshawy is entitled to a conditional privilege with respect

to statements that she allegedly made to the Inspector General of the Department of Housing &

Community Development regarding allegations of bribery and shredding documents.  There is

no dispute that Ms. Elmenshawy requested that the Inspector General conduct an investigation to

determine whether Plaintiff stole or destroyed certain City documents.  This request was made

after a secretary informed Ms. Elmenshawy that Plaintiff borrowed her paper shredder and Ms.

Elmenshawy discovered that certain files from Plaintiff's office appeared missing.[16]  In this

context, statements made by Ms. Elmenshawy to the Inspector General are subject to a

conditional or qualified privilege because both parties clearly have a mutual and legitimate

interest in the underlying subject matter, *i.e.*, destruction of official documents and bribery.[17]

Notably, Plaintiff does not dispute that a conditional privilege applies to such statements.  (*See*

Pl.'s Opp. p. 15 (arguing only that the privilege may be defeated).)

Ms. Elmenshawy would lose the conditional privilege recognized by this Court if

_____

[16]     The purpose of the investigation was to determine whether Plaintiff violated any
internal policies regarding the destruction of official documents.  Ultimately, the Inspector
General concluded that "[t]here is no evidence to reflect that official documents were shredded."
(Defs' Summ. J. Mem. Ex. 6.)

[17]     This finding is consistent with decisions by Maryland courts, who have
recognized that "communications arising out of the employer-employee relationship clearly
enjoy a qualified privilege." *McDermott v. Hughley*, 561 A.2d 1038, 1046 (Md. 1989).  That
privilege has been extended to statements accusing employees or former employees of theft.  *See
Piskor*, 352 A.2d at 815; *Jacron Sales Co. v. Sindorf*, 350 A.2d 688 (Md. 1976).

Plaintiff can show that "'the publication is made for a purpose other than to further the social interest entitled to protection . . . or can prove malice on the part of the publisher.'"  *Gohari*, 767 A.2d at 333 (quoting *McDermott*, 561 A.2d at 1047).  After reviewing the evidence forecast by Plaintiff, this Court concludes that Plaintiff has failed to identify facts that are sufficient to make such a showing.  First, Plaintiff forecasts no evidence to suggest that the statements at issue were uttered by Ms. Elmenshawy for a purpose other than to further the protected interest.  (*See* Pl.'s Opp. pp. 14-15.)  Second, there is undisputed evidence in the record to suggest that, to the extent that Ms. Elmenshawy made any allegations against Plaintiff, she possessed a reasonable basis for doing so.[18]  Finally, this Court finds that Plaintiff's attempt to argue that Ms. Elmenshawy engaged in a pattern of conduct that would sustain an inference of malice is not supported by probative evidence.  *See*, *e.g.*, *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.") (citation omitted).  Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiff's defamation claims against Ms. Elmenshawy for alleging that Plaintiff took a bribe and destroyed City documents is GRANTED.

### c.      The Mayor and City Council of Baltimore.

Defendants contend that the Mayor and City Council of Baltimore are protected against Plaintiff's defamation and other state law tort claims under the doctrine that municipalities and

---

[18]      With respect to the bribery allegation, for example, the evidence forecast by the parties indicates that this allegation originated from a Baltimore restaurant owner, not Ms. Elmenshawy.  *See* Discussion *infra* § V.C.2.b.  With respect to the allegation that Plaintiff destroyed documents, Plaintiff "admits shredding 'notes, personal items, and copies of documents'. . . ."  (Pl.'s Opp. p. 25.)

their agencies are immune from suit for alleged tortious conduct arising out of governmental—as opposed to proprietary—functions.  *See*, *e.g.*, *Clea v. City of Baltimore*, 541 A.2d 1303, 1305 (Md. 1988); *Leese v. Baltimore County*, 497 A.2d at 177; *Tadjer v. Montgomery County*, 479 A.2d 1321, 1324 (Md. 1984).  The test for determining whether an action is governmental in nature, and thus merits immunity, is as follows:

> Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in nature.

*Austin v. City of Baltimore*, 405 A.2d 255, 259 (Md. 1975).  In this case, the parties appear to agree that, at least with respect to Plaintiff's defamation claim, the Mayor and City Council of Baltimore are entitled to governmental immunity because operating the Department of Housing & Community Development is a governmental function.[19]  (*See* Pl.'s Opp. p. 16; Def.'s Summ. J. Mem. p. 13-14.)  Accordingly, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's defamation claim against the Mayor and City Council of Baltimore.

### (2)    Defamation.

Plaintiff contends that he was defamed when Ms. Elmenshawy, Mayor O'Malley, and unnamed John and Jane Does told third parties that Plaintiff took a bribe, was demoted because

---

[19]    Plaintiff attempts to argue that governmental immunity does not apply to cause of action for wrongful termination.  (*See* Pl.'s Opp. p. 16 (noting that "[w]hile operating HCD may be a governmental function, the employment of individual HCD employees is not").)  This Court need not reach this argument because Plaintiff's wrongful termination claim fails for other reasons.  *See* Discussion *supra* § V.B.  This Court notes, however, that Plaintiff's contention that employment is never a governmental function has been rejected in other contexts.  *See*, *e.g.*, *Lizzi v. Alexander*, 255 F.3d 128, 133 (4th Cir. 2001) ("[H]iring, training, and supervision practices are governmental functions."), *overruled in part on other grounds by Nevada Dep't. of Human Resources v. Hibbs*, 538 U.S. 721 (2003).

he was working at "cross purposes" with HCD, and shredded official City documents.  (*See* Am.

Compl. ¶¶ 65-69.)  Defendants contend that Plaintiff cannot satisfy elements of the tort of

defamation with respect to any of these alleged defamatory statements.

It is well-established that a "defamatory statement is one which tends to expose a person

to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from

having a good opinion of, or associating with, that person."  *Rosenberg v. Helinski*, 616 A.2d

866, 871 (Md. 1992) (citing *Batson v. Shiflett*, 602 A.2d 1191, 1210 (Md. 1992)).  To maintain a

cause of action for defamation where the plaintiff is not a public figure, the plaintiff must prove:

(1) that the defendant made a defamatory communication to a third person; (2) that the statement

was false; (3) that the defendant was at fault in communicating the statement; and (4) that the

plaintiff suffered harm.  *Samuels v. Tschechtelin*, 763 A.2d 209, 242 (Md. Ct. Spec. App. 2000)

(citations omitted).  The "fault" element is based on actual malice or negligence.  Actual malice

"is established when the plaintiff shows, by clear and convincing evidence, that the defendant

published the statement in issue either with reckless disregard for its truth or with actual

knowledge of its falsity."  *Shapiro v. Massengill*, 661 A.2d 202, 217 (Md. Ct. Spec. App. 1995)

(citing *Batson*, 602 A.2d at 1213-14)), *cert. denied*, 688 A.2d 36 (1995).  Negligence need only

be shown by a preponderance of the evidence.  *Shapiro*, 661 A.2d at 217.

### a.    The "Cross-Purposes" Statement.

Plaintiff claims that Ms. Elmenshawy informed the attendees at an August 2003 staff

meeting that "[Plaintiff] works cross-purposes against the division, and is being reassigned to

Demolition."  (Am. Comp. ¶ 31.)  Defendants argue that the defamation claim based on this

statement must fail because, *inter alia*, Plaintiff cannot establish that he suffered any resulting

harm. (*See* Defs' Summ. J. Mem. p. 33.)  Plaintiff responds that he need not demonstrate harm

because Ms. Elmenshawy's communication is defamatory *per se*.  (*See* Pl.'s Opp. p. 26.)

As a preliminary matter, this Court must determine whether Ms. Elmenshawy's alleged

statement regarding Plaintiff constitutes defamation *per se* or defamation *per quod*.  The

distinction between these types of defamation is as follows:

> In the case of words or conduct actionable *per se*, their injurious
> character is a self-evident fact of common knowledge of which the
> court takes judicial notice and need not be pleaded or proved.  In the
> case of words or conduct actionable only *per quod*, the injurious
> effect must be established by allegations and proof of special damage
> and in such cases it is not only necessary to plead and show that the
> words or actions were defamatory, but it must also appear that such
> words or conduct caused actual damage.

*M & S Furniture Sales Co. v. Edward J. DeBartolo Corp.*, 241 A.2d 126, 128 (Md. 1968);

*Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1119 (Md. 1979).  Whether an alleged defamatory

statement is *per se* or *per quod* is a question of law for the court.  *Tschechtelin*, 763 A.2d at 244-

45 (citations omitted).

This Court finds that Ms. Elmenshawy's statement that "[Plaintiff] works cross-purposes

against the division" constitutes defamation *per quod*.  Standing alone, these words do not

expose Plaintiff to public scorn, hatred, contempt or ridicule.  If true, all that follows from Ms.

Elmenshawy's statement is that Plaintiff's conduct is driven by purposes that are inconsistent

with those of the division.  The statement does not imply any particular facts regarding, for

example, the purposes behind Plaintiff's work, the purposes valued by the division, or any

alleged incapacity or lack of qualification that might be associated with Plaintiff.  *Cf. Leese v.*

*Baltimore County*, 497 A.2d at 175 (noting that statements are defamatory *per se* when "if true,

[they] would disqualify him or render him less fit properly to fulfill the duties incident to the

special character assumed.") (citations omitted).  In addition, Plaintiff has not alleged any

extrinsic facts to support an argument that the statement would have been understood to carry a

defamatory connotation.  As a result, even viewing the facts in the light most favorable to

Plaintiff, this Court cannot conclude that Ms. Elmenshawy's alleged statement amounts to

defamation *per se*.

Because the statement at issue is defamatory *per quod*, Plaintiff is required to allege and

prove actual damages.  *See*, *e.g.*, *Gooch v. Md. Mechanical*, 567 A.2d 954, 963 (Md. Ct. Spec.

App. 1990).  With respect to this particular communication, however, Plaintiff makes no attempt

to prove actual damages.  (*See* Pl.'s Opp. p. 26.)  Accordingly, Defendants' Motion for Summary

Judgment with respect to Plaintiff's defamation claim, based on the alleged statement that

"[Plaintiff] works cross-purposes against the division, and is being reassigned to Demolition", is

GRANTED.

### b.    The Bribery Statement.

Plaintiff contends that he was defamed when Ms. Elmenshawy told restaurant owner

Khosro Sakinedzad that she had accused Plaintiff of taking a bribe from Mr. Sakinedzad:

> [On July 2, 2003], Plaintiff happened to meet Louisiana Restaurant
> owner Khosro Sakinedzad at a food store in Baltimore City.
> Sakinedzad informed Plaintiff that Ms. Elmenshawy, Plaintiff's
> immediate supervisor, had accused Plaintiff of taking a bribe from
> him.  He told Plaintiff that the City Inspector General ("IG") was
> conducting an investigation and he had told the IG's office that the
> Plaintiff had never taken a bribe from him.  This was the first time
> that Plaintiff had heard about any such allegation or attending
> investigation.

(Am. Compl. ¶ 24; *see also* Pl.'s Opp. p. 4 (same).)  Defendants argue that Plaintiff's claim for

defamation claim that is based on the above communication fails because, *inter alia*, there is no

evidence that Ms. Elmenshawy accused Plaintiff of taking a bribe.  (*See* Defs' Summ. J. Mem. p.

33.)  Plaintiff responds that factual disputes prevent this matter from being resolved before trial.

(*See* Pl.'s Opp. pp. 25-26.)

Plaintiff's support for the allegation that Ms. Elmenshawy accused Plaintiff of taking a

bribe appears limited to the following deposition testimony:

> Q.   So around the time of your suspension you said I can't help
> you [to Mr. Sakinedzad]?
>
> A.   I don't have time.  Go and see Ms. Elmenshawy . . . After six
> months, I saw him in the hallway when I came back from the
> suspension.  And he says what's happening with your job?
> They are doing investigation.  I said what?  He said yeah.
> They called me in, Ms. Elmenshawy called me, the IG called
> me, and in his words, the black gentlemen.  I said was it Mr.
> Love?  He said yeah, that was Mr. Love.  And they were
> asking me questions about what bribe did he take?  And I told
> them that was the only gentleman who helped me.  And he
> told me the day he was going, I didn't know what was going.
> . . .[20]

(Bharadwaja Dep. p. 106; *see also* Pl.'s Opp p. 25 (citing Bharadwaja Dep. pp. 104-05).)  There

are numerous problems with the evidence forecast by Plaintiff.  First, Ms. Elmenshawy's

statements to the Inspector General are entitled to a conditional or qualified privilege.  *See*

Discussion *supra* § V.C.1.b.  Second, Plaintiff cites only to his deposition testimony to establish

that "Mr. Sakinedzad said, 'Ms. Elmenshawy said, "Plaintiff took a bribe."'"  This testimony

constitutes inadmissible hearsay.[21]  Third, even if Plaintiff's argument did not rely on hearsay, no

---

[20]   The quoted deposition testimony ends abruptly because Plaintiff did not submit
page 107 of the relevant transcript.

[21]   Plaintiff's proffered testimony consists of two segments.  In segment one, Ms.
Elmenshawy supposedly accuses Plaintiff of bribery (the "Elmenshawy Bribery Accusation").
The Elmenshawy Bribery Accusation is arguably nonhearsay under Rule 801(d)(2) (admission

reasonable jury could conclude from the evidence forecast by Plaintiff that Ms. Elmenshawy was the one who accused Plaintiff of taking a bribe. The deposition testimony cited by Plaintiff neither states nor suggests that Ms. Elmenshawy made the initial complaint regarding Plaintiff. The deposition testimony of Inspector General Hilton Green, however, provides that "the initial allegation came in as a complaint from one of the restaurant owners." (Green Dep. p. 20.) After reviewing the evidence forecast by the parties, this Court concludes that Plaintiff has *not* established that "there is a factual dispute regarding the statements since the Baltimore restaurant owner not only said it was alleged that Mr. Bharadwaja took a bribe, but that this allegation was specifically made by Ms. Elmenshawy." (Pl.'s Opp. p. 25.) Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiff's defamation claims against Ms. Elmenshawy for alleging that Plaintiff took a bribe is GRANTED.

### c.  The Shredding Statements.

Plaintiff contends that he was defamed when Ms. Elmenshawy and Mayor O'Malley told third parties that Plaintiff shredded City documents. (*See* Am. Compl. ¶ 66; *see also* Pl.'s Opp. pp. 7-8.) Defendants argue that Plaintiff's resulting defamation claim fails because, *inter alia*, Plaintiff admits that he shredded City documents and failed to show that Mayor O'Malley made the alleged defamatory statements to a third party. (*See* Defs' Summ. J. Mem. pp. 32-33.)

---

by party-opponent). In segment two, however, Mr. Sakinedzad relates Ms. Elmenshawy's bribery accusation to Plaintiff (the "Sakinedzad Statement"). The Sakinedzad Statement appears to be inadmissible hearsay, and Plaintiff offers no basis for concluding otherwise. *See* Fed. R. Evid. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."); *Stanley Martin Cos. v. Universal Forest Prods. Shoffner LLC*, 396 F. Supp. 2d 606, 613 (D. Md. 2005) (hearsay evidence is "as inadmissible in support of a summary judgment motion as it would be at trial") (citing *Md. Highways Contractors Ass'n v. Md.*, 933 F.2d 1246, 1251-52 (4th Cir. 1991)).

Plaintiff responds that although he admitted shredding City documents, he never admitted shredding *official* City documents.  (*See* Pl.'s Opp. p. 25.)  Plaintiff also contends that the statements at issue were "proven to be false" by the Inspector General of the Department of Housing & Community Development.  (*Id.*)

Plaintiff's cause of action for defamation based on statements that Plaintiff shredded City documents suffers from numerous problems.  First, as noted above, Ms. Elmenshawy and Mayor O'Malley are shielded from this claim pursuant to certain privilege and immunity doctrines. *See* Discussion *supra* §§ V.C.1.a-b.  Second, Plaintiff fails to forecast sufficient evidence regarding the *publication* of these alleged defamatory statements.  For example, the evidence forecast with respect to Mayor O'Malley appears limited to Plaintiff's claim that "[Mayor O'Malley] confronted Mr. Bharadwaja about the allegation."  (Pl.'s Opp. p. 25 (citing Bharadwaja Dep. pp. 149-50).)  This evidence cannot sustain a defamation claim against Mayor O'Malley because Mayor O'Malley made the communication to Plaintiff, not a third person. Finally, the evidence forecast with respect to Ms. Elmenshawy appears limited to her request that an investigation be conducted to determine whether Plaintiff stole or destroyed City documents. This allegation, however, is protected by the conditional privilege discussed above.  Finally, Ms. Elmenshawy possessed a reasonable basis for making such an allegation.  (*See* Pl.'s Opp. p. 25 (where Plaintiff "admits shredding 'notes, personal items, and copies of documents'. . . .").) Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiff's defamation claims in connection with allegations that Plaintiff shredded City documents is GRANTED.

In sum, each of the statements that form the basis of Plaintiff's cause of action for defamation are protected by an immunity or conditional privilege or fail because Plaintiff cannot

satisfy certain elements of the tort of defamation.  Accordingly, Defendants' Motion for Summary Judgment is GRANTED with respect to Plaintiff's cause of action for defamation (Count II).

CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Supplement its Response and Defendants' Motion for Summary Judgment are GRANTED.  A separate Order and Judgment follows.

Dated: September 27, 2006

/s/ _____

Richard D. Bennett
United States District Judge